UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| DOCTOR'S ASSOCIATES INC. )<br> )<br>             Plaintiff,         )<br> )<br>     v.                             )<br> )<br>BRIAN KANG and MID WILSHIRE )<br>CONSULTING, INC., all d/b/a  )<br>SOCIAL WELLNESS,           )<br>SOCIAL WELLNESS GROUP, )<br>and SOCIAL WELLNESS FOUNDATION )<br> )<br>             Defendants.      ) | Civil Action No.<br><br><br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Doctor's Associates Inc. ("DAI" or "Plaintiff") for its Complaint against Defendants Brian J. Kang and Mid Wilshire Consulting, Inc. (collectively "Defendant" or "Social Wellness"), all doing business as Social Wellness, Social Wellness Group, and/or Social Wellness Foundation, alleges as follows:

### Introduction

1.     This is an action for federal trademark infringement, federal unfair competition, and federal trademark dilution in violation of the Federal Lanham Act, 15 U.S.C. § 1051 *et seq*.; common law trademark infringement; state unfair competition in violation of the Connecticut Unfair Trade Practices Act; and breach of contract against Defendant for its commercial use and exploitation of Plaintiff's federally registered SUBWAY family of marks ("Plaintiff's Mark") on or in connection with the offer and provision of goods and/or services.

1

2. Plaintiff hereby seeks (1) injunctive relief against Defendant's continued unauthorized and improper commercial use and exploitation of any trademark confusingly similar to any of Plaintiff's Mark; and (2) all damages arising from Defendant's past and present infringement, including all statutory damages, and Plaintiff's attorneys' fees and costs for having to bring this suit to enforce its trademark rights.

## Parties

3. Plaintiff DAI is a Florida corporation having a place of business at 325 Bic Drive, Milford, Connecticut 06461.

4. Upon information and belief, Brian J. Kang is an individual having a residence at 1360 Ferrel Court, San Jose, California 95132.

5. Upon information and belief, Brian J. Kang is doing business as Social Wellness, Social Wellness Group, and/or Social Wellness Foundation. Upon information and belief, Brian J. Kang is doing business at 3550 Wilshire Boulevard., 105-60, Los Angeles, California 90010.

6. Upon information and belief, Mid Wilshire Consulting, Inc. is a California corporation having a place of business at 3550 Wilshire Blvd., 105-60, Los Angeles, CA 90010.

7. Upon information and belief, Brian J. Kang is the registered agent for service of process for Mid Wilshire Consulting, Inc.

8. Upon information and belief, Mid Wilshire Consulting, Inc. is doing business as Social Wellness, Social Wellness Group, and/or Social Wellness Foundation.

## Jurisdiction and Venue

9. This Court has jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, and 1338(a) over the federal trademark infringement, unfair competition, and dilution claims, which arise under the Federal Lanham Act, 15 U.S.C. §§ 1051 *et seq*.; and has jurisdiction pursuant to

28 U.S.C. §§ 1338(b) and 1367 over the state unfair competition claim, common law trademark infringement claim, and breach of contract claim.

10. Upon information and belief, this Court has jurisdiction over Defendant because it does business in Connecticut.

11. Upon information and belief, Defendant does business in Connecticut by offering to host wellness seminars at companies in Connecticut.

12. Upon information and belief, Defendant does business in Connecticut by hosting wellness seminars at companies in Connecticut.

13. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## Facts

A. **Plaintiff's Mark and SUBWAY Restaurants.**

14. Plaintiff is the owner of the proprietary system establishing and operating restaurants featuring sandwiches, pizza, and salads under the trade name SUBWAY®. Plaintiff developed this system spending considerable time, money, and effort. The system includes the trademark SUBWAY, other trademarks, trade names, services, commercial announcements, slogans, and other related insignia. This system also includes goodwill associated with the marks, copyright, trade dress, recipes, formulas, food preparation procedures, business methods, forms, policies, and all other techniques. Plaintiff licenses others to operate SUBWAY restaurants using this system.

15. In the United States, there are approximately 29,000 licensed SUBWAY restaurants ("SUBWAY restaurants").

16. Plaintiff has continuously used SUBWAY as a trade name for its SUBWAY

restaurants since at least as early as August 21, 1967.

17. Plaintiff is the owner of the following U.S. Trademark Registrations for various SUBWAY marks: 1,174,608; 1,307,341; 1,387,847; 1,514,071; 1,524,986; 1,630,440; 1,627,774; 1,737,353; 1,883,799; 1,896,378; 1,909,034; 1,925,713; 2,134,253; 2,162,105; 2,504,512; 2,591,069; 2,567,334; 3,296,655; 3,445,885; 3,503,520; 3,503,521; 3,355,021; 3,310,928; 3,293,264; 3,693,027; 3,444,168; 3,536,637; 3,696,969; 3,643,521; 3,695,144; 3,679,096; 3,679,100; 3,746,362; 3,774,480; 3,869,196; 3,013,320; and 2,732,170.  These registrations are valid and subsisting.  Printouts for each of these registrations from the USPTO website establishing status and title are set out in Exhibit A. The SUBWAY mark and SUBWAY logo trademark are famous trademarks. Plaintiff's family of SUBWAY marks is referred to herein as Plaintiff's Mark.

18. SUBWAY restaurants have been and continue to offer to sell and sell sandwiches under Plaintiff's Mark under authorization and license of Plaintiff.

19. SUBWAY restaurants have been and continue to offer and provide catering services under Plaintiff's Mark under authorization and license of Plaintiff.

**B.     Defendant's Wellness Seminars.**

20. Upon information and belief, Defendant is in the business of generating leads for doctor and chiropractors in the United States.

21. Upon information and belief, Defendant generates leads for its doctors and chiropractors clients by hosting complimentary breakfasts and lunches, sometimes referred to as "Lunch & Learns," for potential patients.

22. Upon information and belief, an example of a marketing document for a "Lunch & Learn" offered by Defendant to companies in the United States is included in Exhibit B. That

document states that:

> Social Wellness works with companies to coordinate free Lunch or breakfast wellness seminars, health screenings, and health fairs all at no cost! "Lunch & Learns" are held conveniently on your site presenting customized topics suited to your employees! We have a nationwide network of presenters addressing current and relevant health issues designed to motivate healthier and happier employees

23. Upon information and belief, client doctors and chiropractors of Defendant make presentations at the seminars organized by the Defendant.

24. Upon information and belief, the seminars are presented to generate new patient business for Defendant's client doctors and chiropractors.

25. Upon information and belief, Defendant operates an interactive website, available at www.socialwellnesstalks.com. The Defendant's website is publically accessible to residents in Connecticut. A screenshot from the homepage of Defendant's website is included in Exhibit C.

**C.     Defendant Infringes Plaintiff's Mark.**

26. Defendant offers its goods and/or services under Plaintiff's Mark without the authorization of Plaintiff.

27. Defendant's website offers health consulting services to groups. The website invites potential customers to "[s]ign up for a free complimentary lunch sponsored by Subway for your entire company!" A screenshot captured on November 5, 2013 from Defendant's website is included in Exhibit C.

28. Defendant's website has offered "Free SUBWAY."

29. Defendant routinely disseminates emails to companies in the United States offering to provide seminars including "[c]omplimentary catered Subway breakfast or lunch for your company."

30. Defendant has routinely sent and continues to send email blasts to companies enclosing flyers which include the Plaintiff's Mark and imply or explicitly state sponsorship of

5

seminars by Plaintiff's SUBWAY restaurants.  A copy of one such flyer is attached as Exhibit B.

31. An example of an email sent by Defendant on October 3, 2013 is included as Exhibit D.  That email states:

> Your company has been selected for a Complimentary catered lunch from your local Subway Restaurant for you and your staff. This is part of our national "Eat Well Work Well" campaign put on by Social Wellness Foundation and Subway Restaurants. To schedule your company luncheon please call 1800-380-9855 and select option 1 (due to the high volume of calls if you get the answering service please leave a name and number and a representative will get back to you shortly) or email us at info@socialwellnesstalks.com with three tentative dates, lunch time, head count, company you are calling from, address, and person of contact.

32. Upon information and belief, Defendant routinely sends such emails to companies in Connecticut.  For example, in or around April of 2013, Defendant sent an email to a Norwalk company offering to host a seminar sponsored by SUBWAY at the company's Norwalk location. That company subsequently contacted Plaintiff and sought to determine whether Plaintiff was associated with Defendant. Specially, the company stated:

> Good afternoon, We have received an email from the Social Wellness Foundation regarding a free Subway lunch for our business. What I would like to know before proceeding is whether this is a legitimate offer and are you in partnership with the Social Wellness Foundation. Thank you, [Redacted Name] Human Resources Manager [Redacted Company based in Norwalk Connecticut]

A record of this correspondence is included in Exhibit E.

33. Upon information belief, in or around April 2013 Defendant sent an email to a company having an office in East Lyme, Connecticut and offered to organize a seminar at the company's Connecticut office. The company subsequently contacted Plaintiff and sought to determine whether Plaintiff was associated with Defendant. Specifically, the company asked Plaintiff:

> I received an email today at work but l"d like to confirm with your company that you do in fact have this promotion. Here"s the email: Dear [redacted name] Complimentary catered lunch from your local Subway Restaurant for you and your company. This is part of our national "Eat Well Work Well" campaign put on by Social Wellness Foundation

6

and Subway Restaurants. To schedule your company luncheon please call 1800-380-9855 and select option 1 (due to the high volume of calls if you get the answering service please leave a name and number and a representative will get back to you shortly) or email us at info@socialwellnesstalks.com with three tentative dates, lunch time, head count, company you are calling from, and person of contact. Only valid in the US, 1 luncheon per company, offer ends 7-30-1 3 (Open Mon-Fri 9AM-6PM PST) Social Wellness Foundation & Subway Restraurants [sic] –Supporting Communities & Building Stronger Companies Together for Over 7 Years

A record of this correspondence is included in Exhibit E.

34. Plaintiff has never approved or authorized Defendant to use Plaintiff's Mark.

35. Plaintiff has never sponsored or endorsed any good or service offered by Defendant.

36. Defendant uses the famous well-known SUBWAY logo in connection with its marketing of its client's services for patients.

37. On January 28, 2013, Plaintiff sent a cease and desist letter to Defendant demanding that it cease and desist from all further infringement of Plaintiff's Mark. Specifically, that letter stated:

> DAI has recently been aware that the Social Wellness Foundation is disseminating emails offering a "[c]omplimentary catered Subway breakfast or lunch for your company" with participation in your program. … DAI is also aware that on your website www.socialwellnesstalks.com, you provide a link to a "Free SUBWAY". The continued use of DAI's marks in conjunction with the program may cause confusion with consumers, leading them to believe SUBWAY® restaurants is associated with the Social Wellness Foundation and this program. Continued use of the registered marks of the SUBWAY® brand constitutes a violation of the Intellectual Property rights of DAI. DAI hereby demands that you immediately remove all references to the SUBWAY® brand from your website and all future solicitations. This includes, but is not limited to the use of the work mark SUBWAY®, the SUBWAY® logo, and copyrighted images of SUBWAY® sandwiches.

A copy of that letter is included as Exhibit F.

38. On or around January 28, 2013, Plaintiff received a telephone call from Brian J. Kang claiming to be the director of Social Wellness. During that telephone call Mr. Kang represented that local DAI franchises had agreed to sponsor the seminars.

7

39.     On February 21, 2013, Plaintiff sent a second cease and desist letter to Defendant demanding that it cease and desist from all further infringement of Plaintiff's Mark or provide documentation of local franchise sponsorship agreements. Specifically, that letter stated:

> In a phone conversation with a representative from your company named Brian. I was informed that individual franchisees of SUBWAY® restaurants have agreed to sponsor these luncheons and it was agreed that he would forward to me further information regarding the same. As a kind reminder, I await this additional information regarding these sponsorships and the franchisee(s) who are participating in this program.
>
> DAI is aware that the Social Wellness Foundation continues to send emails offering a "[c]omplimentary catered Subway breakfast or lunch for your Company" with participation in your program. DAI is also aware that on your website www.socialwellnesstalks.com, you provide a link to "Free SUBWAY". … As mentioned in my previous letter, the continued use of DAI 's marks in connection with this program may cause confusion with consumers, leading them to believe SUBWAY® restaurants endorses the Social Wellness Foundation and its programs.
>
> DAI hereby demands that until you provide evidence of your relationship with the franchisees, you immediately remove all references to the SUBWAY® brand from your website and all future solicitations.

A copy of that letter is included as Exhibit G.

40.     On February 21, 2013, Plaintiff received an email from Defendant which included a list of alleged participating franchises. A copy of the email is attached as Exhibit H.

41.     On April 23, 2013, Plaintiff sent a response to Defendant, specifically stating:

> [DAI] had an opportunity to discuss your organization … with the franchises you listed in your email below, dated February 21, 2013. The franchises have confirmed that they do not have an affiliation with your program and have not given permission to use of the SUBWAY marks in relation to this program.
>
> DAI would appreciate your co-operation in removing the registered trademarks of Doctor's Associates Inc. and the references to the SUBWAY® brand.

A copy of that response is included as Exhibit H.

42.     In April and May of 2013, Plaintiff began receiving third party inquiries regarding the free SUBWAY lunches offered by Defendant. Copies of two examples of the inquiries are attached as Exhibit E. These inquires demonstrate actual confusion regarding sponsorship of the

8

Defendant's wellness seminars.

43. On May 30, 2013, Plaintiff sent a third cease and desist letter to Defendant enclosing as Annex A an "Agreement to Cease Infringement" for signature by Defendant. A copy of the entire communication is attached as Exhibit I. That agreement states that:

> On behalf of the Social Wellness Foundation, I, the undersigned, agree to immediately cease and desist from any and all further use of the SUBWAY® family of trademarks. In the event this agreement is breached, DAI shall be entitled to costs, attorney's fees, and collection costs related to any claims and/or action brought to enforce this agreement and shall be free to pursue all rights it had as of the date of this letter as if this letter had never been signed.

44. On June 6, 2013, Brian Kang returned an executed copy of the "Agreement to Cease Infringement." A copy of the executed version is attached as Exhibit J.

45. Upon information and belief, Defendant did not cease and desist from all further infringements of Plaintiff's Mark and Defendant continues to willfully infringe Plaintiff's Mark. For example, as recent as October 3, 2013, Defending was offering to host wellness seminars "put on" by "Subway Restaurants." Exhibit D.

## COUNT I
### Trademark Infringement Under
### Section 32 of the Lanham Act, 15 U.S.C. § 1114

46. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

47. Plaintiff's Mark and the goodwill of the businesses associated therewith in the United States and throughout the world are of great and significant value, and are highly distinctive of the Plaintiff's services.

48. Defendant's actions described above have caused and are likely to cause confusion and mistake and to deceive potential customers and the general purchasing public as to the source, origin, or sponsorship of Defendant's services, and are likely to deceive the public

9

into believing that the services offered and sold by Defendant originate from, are associated with, or are otherwise authorized by Plaintiff, all to the damage and detriment, of Plaintiff's reputation, goodwill and sales.

49. Defendant's unauthorized use of Plaintiff's Mark constitutes trademark infringement of the federally-registered Plaintiff's Mark, the full extent of which is presently unknown but is substantial. This has caused damage to Plaintiff and the substantial business and goodwill symbolized by Plaintiff's Mark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

50. Defendant's actions described above, including the unauthorized use of Plaintiff's Marks in interstate commerce, have caused, and unless restrained will continue to cause, great and irreparable injury to Plaintiff, to Plaintiff's Mark, and to the business and goodwill represented thereby, leaving Plaintiff with no adequate remedy at law.

## COUNT II
### Federal Trademark Infringement and Unfair Competition

51. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

52. This claim is against Defendant for trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

53. Upon information and belief, Defendant has used, is using, and intends to continue using now and in the future in commerce Plaintiff's Mark for the offer and provision of goods and services in such a way that has and will continue to cause confusion, mistake, or deception.

54. Upon information and belief, Defendant's use of Plaintiff's Mark for the offer and provision of goods and services has likely caused and will continue to cause confusion of the

relevant public and trade.

55. Plaintiff has been and will continue to be damaged by the confusion, mistake, and deception caused by Defendant's use of Plaintiff's Mark.

56. Any defect, objection to or fault found with Defendant's goods and/or services sold or provided under Plaintiff's Mark would necessarily reflect on and seriously injure the reputation Plaintiff has established for its marks and business

57. Plaintiff does not and has never consented to or authorized Defendant's adoption or commercial use of Plaintiff's Mark for the aforementioned goods and/or services. Defendant therefore has infringed and is infringing Plaintiff's Mark in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

58. Upon information and belief, at all times relevant to this action, including when Defendant first adopted Plaintiff's Mark and commenced commercial use of Plaintiff's Mark on the aforementioned goods and/or services, Defendant knew of the prior adoption and widespread commercial use of Plaintiff's Mark, and Defendant knew of the valuable goodwill and reputation acquired by Plaintiff in connection with Plaintiff's Mark. Defendant's infringement of the Plaintiff's Mark is therefore willful.

59. Upon information and belief, Defendant's use of Plaintiff's Mark has caused confusion and mistake and the deception of purchasers as to the source of origin of Defendant's infringing goods and/or services. Because of the confusion as to the source caused by Defendant's unauthorized use of Plaintiff's Mark, Plaintiff's valuable goodwill developed at great expense and effort by Plaintiff is being irreparably harmed and is at risk of further damage.

60. Defendant's infringement will continue unless enjoined by the Court.

## COUNT III
### Federal Trademark Dilution

61. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

62. As a result of the duration and extent of use of the Plaintiff's Mark by DAI, the duration and extent of the advertising and publicity of the Plaintiff's Mark, the geographical extent of the same, the superior quality of Plaintiff's goods and services, and the degree of recognition of Plaintiff's Mark, Plaintiff's Mark have achieved an extensive degree of distinctiveness and are famous trademarks.

63. As a result of Defendant's use of Plaintiff's mark, Defendant is diluting the distinctive quality of Plaintiff's Mark.

64. Plaintiff will suffer irreparable harm should Defendant's infringing acts be allowed to continue to the great detriment of Plaintiff's reputation and goodwill.

## COUNT IV
### Common Law Trademark Infringement

65. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

66. This claim is against Defendant for common law trademark infringement.

67. In addition to the federal registrations owned by Plaintiff, as set forth above, Plaintiff's Mark enjoys common law rights in Connecticut and throughout the United States. These rights are senior and superior to any rights which Defendant's may claim.

68. Defendant's use of the Plaintiff's Mark is intentionally designed to mimic Plaintiff's Mark so as to cause confusion regarding the source of Defendant's goods and services in that purchasers thereof will be likely to associate or have associated such products with, as

with originating with, or as approved by Plaintiff, all to the detriment of Plaintiff.

69. Defendant's infringement will continue unless enjoined by the Court.

## COUNT V
## Unfair Competition Under Connecticut Law

70. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

71. Defendant's acts as described above constitute unfair competition under the Connecticut Unfair Trade Practices Act.

## COUNT VI
## Breach of Contract

72. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

73. Defendant's acts as described above constitute breach of contract under Connecticut law.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. An order immediately and permanently enjoining Defendant, its officers, members, agents, servants, employees, attorneys, and all persons in active concert or participating with any of them, from:

    i. advertising, marketing, promoting, selling or otherwise offering for sale any good of service that is confusingly similar to Plaintiff's because it uses Plaintiff's Mark, any derivation or colorable imitation thereof, or any mark confusingly similar thereto;

 ii. making or employing any other commercial use of Plaintiff's mark, any derivation or colorable imitation thereof, or any mark confusingly similar thereto;

 iii. using any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendant's services or activities are in any way sponsored, licensed or authorized by or affiliated or connected with Plaintiff;

 iv. doing any other acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead purchasers or consumers or investors into the belief that the products or services promoted, offered, or sponsored by Defendant come from Plaintiff, or are somehow licensed, sponsored, endorsed, or authorized by, or otherwise affiliated or connected with Plaintiff;

 v. otherwise competing unfairly with Plaintiff in any manner; and

 vi. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (i) through (v), or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (i) through (v);

    B.    Direct Defendant to account to Plaintiff for Defendant's profits and order that the Plaintiff's recover its damages arising out of the acts of deception and infringement described above, and a sum equal to three times such profits or damages (whichever is greater), pursuant to 15 U.S.C. § 1117(a) and (b);

    C.    Award Plaintiff statutory damages of $2,000,000 representing $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, pursuant to 15 U.S.C. § 1117(c);

    D.    Award Plaintiff punitive damages on account of Defendant's gross, wanton, willful, and malicious conduct;

    E.    Award Plaintiff costs, attorney's fees, and collection costs pursuant to the agreement executed by the Defendant.

    F.    Direct Defendant to deliver up for destruction any and all guarantees, circulars, price lists, labels, brochures, business cards, signs, prints, packages, wrappers, pouches, advertising matter, promotional, and other materials in the possession or control of Defendant bearing Plaintiff's Mark, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiff's Mark, in accordance with 15 U.S.C. § 1118;

    G.    Direct Defendant to supply Plaintiff with a complete list of entities from whom they have conducted business with under the Plaintiff's mark, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiff's Mark;

    H.    Direct Defendant to file with the Court and serve on counsel for Plaintiff within thirty (30) days after entry of any injunction issued by the Court in this action, a sworn written

statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Defendant has complied with any injunction which the Court may enter in this action;

    I.    Award Plaintiff its reasonable attorney's fees along with the costs and disbursements incurred herein as a result of Defendant's intentional and willful infringement, pursuant to 15 U.S.C. § 1117 and the CUTPA;

    J.    Order that any of Defendant's assets that are held by or within the control of entities that are subject to the jurisdiction of this Court, be restrained and frozen pending the outcome of this action so that Plaintiff's right to the damages set forth in this Complaint is not later rendered meaningless.

    K.    Award Plaintiff's such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Respectfully Submitted,

Date: November 13, 2013

/s/   Walter B. Welsh
Stephen P. McNamara, ct01220
Walter B. Welsh, ct27210
ST. ONGE STEWARD JOHNSTON & REENS, LLC
986 Bedford Street
Stamford, Connecticut 06905-5619
Telephone: 203-324-6155
Facsimile: 203-327-1096
smcnamara@ssjr.com
wwelsh@ssjr.com
litigation@ssjr.com

*Attorneys for Plaintiff Doctor's Associates Inc.*